2-18-0808 Dana Maligano, Defensive Appellee Village of Gurnee Civil Service Commission and Commissioner Chair Ty Lons, Defensive Appellee Arguing on behalf of Defensive Appellees Ms. Melissa V. Saboa, also arguing on behalf of Defensive Appellees Mr. Thomas G. Grant, arguing on behalf of Defensive Appellees Mr. Tony Steven D'Alfisaro Are both sides ready to proceed? Then you may proceed when you're ready. Good morning, Your Honors. May it please the Court. My name is Melissa Sabota, and I am here on behalf of the Village of Gurnee Civil Service Commission and Commissioner Ty Lons. May I proceed? Of course. Thank you. The issue in this case is whether the Circuit Court erred in reversing the Village of Gurnee Police and Fire Commission's decision to discharge Plaintiff Appellee Dana Maligano. First, Appellee did not cross-appeal Judge Ortiz's findings that the Commission's factual findings were not against the manifest weight of the evidence. Therefore, the only issue before this Court is whether the Commission's findings that there was cause for discharge was arbitrary or unreasonable. The majority of Plaintiff Appellee's arguments must be rejected because they were not properly before this Court. First of all, this Court does have jurisdiction in this matter. The Courts have held that when a matter is remanded to an administrative agency to simply enter a judgment or decree in accordance with the lower court's directions or to conduct further proceeding on uncontroverted incidental matters, then irrespective of the remand, the judgment is final and appealable. That was decided in the case of Kreutzer v. Illinois Commerce Commission 980 NE 2D 1238. In this case, Judge Ortiz remanded this matter back to the Commission to enter a penalty less than discharge. He did not order, nor does Plaintiff Appellee contend, that further proceedings were necessary to determine what penalty less than discharge should be entered. Therefore, Judge Ortiz's order was a final and appealable order pursuant to the Illinois Supreme Court Rules 301 and 303, and this matter is properly before this Court. The cases cited by Appellee to support his argument that there is no jurisdiction here are clearly distinguishable from this case. In all of the cases cited by the Appellee, the matters were remanded back to the administrative agencies for further proceedings to make findings on disputed facts or law or conduct further evidentiary hearings. That is not the case in this case. The circuit court merely remanded the matter back to the Village Recruiting Civil Service Commission to enter a penalty less than discharge. There was no additional hearings necessary. Finally, to find that the matter was required to go back to the Commission before being appealed would have been a waste of the Court Commission and the Village's limited resources. The Commission filed a motion to stay the Court's order in order to appeal this matter, which was granted by the circuit court. Thus, there was nothing further for the Commission to do other than appeal what it believes was an erroneous decision by the circuit court. Have you seen any cases where a case was sent back for a new, something less than discharge, where it was found there was no jurisdiction? I have not, Your Honor. I mean, we have some cases where there was jurisdiction, but it really wasn't addressed. Robbins, Williams, some of these cases, but they never really addressed it. It was never an issue. Correct, Your Honor. So there are no other cases out there that you're aware of? Not that I'm aware of, Your Honor. It's our position that under the legal standard for jurisdiction, when a matter is remanded back to the administrative agency to simply enter an order that's consistent with the circuit court's findings, that then the matter is appealable, regardless of the remand order. And in this case, that's what the circuit court remand was, was to enter an order, the Commission to enter an order with a penalty less than discharge. So based under that standard, we believe in the cases cited by the plaintiff that are clearly distinguishable, where the matters were remanded for further proceedings and evidentiary hearings to decide on disputed facts or questions of law, we believe that reviewing those cases, compared to the circumstances of this case, that this case is properly, the jurisdiction is properly before this court. As far as the standard of review is concerned, because the Commission's factual findings are not in dispute, the appropriate standard is clearly erroneous. I believe all three parties are in agreement on that. And as the appellee notes, the standard is highly deferential to the Commission's determinations. Finally, the decision to discharge was not arbitrary or unreasonable. Most of the appellee's arguments to the contrary must be rejected by this court because they were not properly brought before this court in a cross-appeal. First, in accepting the Commission's factual findings and the circuit court's specific findings that appellee was not treated differently than other employees, he cannot now ask his court to find differently. Setting aside that argument, appellee acknowledged the fact that different individuals, that the standard for determining whether different individuals are treated differently and whether that's cause to overturn a discharge, the standard is whether the individuals were treated, received different discipline in single, identical, completely related cases. In this case, that was not the situation. The appellee was not in the same identical situation as firefighters that appellee cites to, Firefighter Drinkle and Firefighter Cendretti, because appellee has had prior discipline history. He had a 24-hour suspension previously, as well as some reprimands, which the other firefighters did not. And in the cases, those situations would not be viewed as identical, similarly situated firefighters, such that treating them differently would be grounds to overturn the discharge. The court held its decision in order. The court is left with a firm and definite conclusion that a mistake had been made, correct? Yes, sir. And the disparate treatment the trial court, so that didn't buy that argument? Correct, Your Honor. We don't review with the trial court. We review before I understand that. But what arguments were made to the trial court that the trial court blocked, other than disparate treatment, because the trial court didn't buy that one? So what arguments were made to the trial court that showed that a mistake was made on the penalty? Your Honor, that's a good question. There was nothing in the court's order that identified what it was basing its decision on, which was part of the reason we felt that the lower court, the circuit court's decision, was clearly inappropriate in this case, because it is a highly deferential standard to the administrative agency's decision as far as what is cause for discharge. And in this case, the circuit court did not cite to any basis for why he believed, why Judge Ortiz believed that the decision for discharge was inappropriate, just that he felt that it was, that there was a mistake that had been made, but did not identify that mistake. So it is the commission's position that the circuit court was incorrect and that there was, in fact, cause for discharge in this case and that the commission's findings to support the cause for discharge were not arbitrary or unreasonable. The appellee's misconduct, which is not disputed in this case, the circuit court found that he did engage in the alleged misconduct, that he violated both written and unwritten rules, and that those were within the scope of his employment. They took place while he was operating an ambulance, and one of which took place while he was, he actually, there was a patient in the back of the ambulance that was being treated by another firefighter, and because those, his misconduct took place in the scope of his employment, the commission found that there was cause for discharge in this case, especially in light of his employment history, as well as his prior discipline history. He had demonstrated a continued inability to perform his duties and responsibilities in compliance with the department's directives and rules.  Was there also, in the course of that prior discipline, opportunities for improvement, for mentoring, for continuing education? Yes, Your Honor. He was given those opportunities. He was given opportunities to work with the fire chief as well as the other leadership in the fire department to improve his conduct, but he consistently failed to follow the rules, and that was part of the basis for the commission's decision that there was cause for termination in this case. And based on the precedent, it is the commission that is in the best position to determine the effect of an employee's conduct on the operations of the fire department, and that's established in Robbins v. Department of State Police Merit Board. Therefore, the determination of the commission is given great deference by the courts as set forth in Sutton v. Civil Service Commission. And the commission's determination that there was cause for discharge was not arbitrary or unreasonable. It was clearly related and within the scope of his employment. All right. Well, your time is up.  Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, and quickly so, my name is Thomas Dratz. I represent the Village of Gurney Fire Chief, John Cavanaugh. If I might, I might address, Justice Burke, your question about where Judge Ortiz came from when he decided there was clearly a mistake. He didn't really say. In fact, he marched right along with the arguments that we had made. There was violation of rules, both written and oral. There was no disparate treatment, which was a significant argument advanced by Mr. Mulligano. So there was cause for discipline. That should have ended it, because when you find cause, the discipline should be within the purview of the commission. The counsel covered those points, but Judge Ortiz, you can only surmise, thought it was just unfair, just too tough, and therefore he exercised leniency. But as we know, the courts are not supposed to do that. Even if the court would think a more lenient penalty is appropriate, the court is not supposed to substitute its judgment, and there's a number of cases like that. What we have is a person that had 10 years of experience, which on the one hand, he says he loves the department, he wants to stay on. He had all these years. And then on the other hand, he said repeatedly he wanted more mentoring. And Justice Jorgensen, you asked that question, and the Chief so testified. He was given a lot of opportunity for improvement, and the Chief's testimony is important because in a setting of a fire department, you not only go to work and then go home, you live together, and you fight fires and engage in activities that often involve life and death, and you've got to have each other's back, so there's some critical issues of trust. And Chief Kavanaugh, who pointed out there hadn't been another discharge, that he knew of in the entire history of the department. So this isn't something they add on and they go get people and let's go do this lightly. He had to make a number of scheduling adjustments because there were firefighters who didn't want to risk their careers working with someone who would act unsafely, and that's how they viewed at least some of them, and the record shows that there were others who said they had no problem working with firefighter Mulligan. But weighing those things, and there really are no contested facts. The first incident where there was a failure by this employee to report up and ready for service, his repeated testimony was he didn't remember. Now that in and of itself is a bit of a problem, but the more serious incident occurred when, well, I'll just go to that. Another fire service had to answer that call because he hadn't reported that he had finished at a hospital and was back up and ready for service. The precipitating event, so to speak, was driving a non-emergent patient with lights only on, no siren. Is that the Code 3? That's the Code 3 issue, yes, Your Honor. There's never a time you're supposed to go lights only, and Mr. Mulligan brought in a former boss from another village who was a deputy chief, somewhat of an expert, somewhat of a character witness. When I asked him is there ever a time it's appropriate to proceed lights only, he said no. And if there was anyone brought into this event as somewhat of an independent, quote, expert, he himself didn't support Mr. Mulligan's contention. I thought there was some evidence that if it's like the dead of night and there's no traffic, that sometimes they do go lights only. Sometimes they do, but they're not supposed to. That's not the situation here, I understand that from his testimony. People had to leave the roadway, and that's how the partner, Drinkle, in the back attending to the patient, suddenly saw cars, you know, swerving out of their lanes. That's a pretty serious thing, and emergency vehicles are not supposed to do that just because it might get them home earlier or get the job over with more quickly. This patient was not in an emergency state of health. And Drinkle reported it to authorities, notwithstanding the fact that Mr. Mulligan said, no one will know if we don't say anything. Again, subtle perhaps, not subtle to the chief who doesn't want this person back. Was there disparate treatment with Drinkle, though, because Drinkle did not correct Mulligan I understand he was treating the patient. The reasons he gave for that, but he's not recommending it. He received less discipline. His record is, first of all, much greater tenure and much less discipline, and that's why disparate treatment doesn't work. As a principle of labor law, you need to have everything lined up, and it doesn't work. It didn't work. Thank you. Thank you. Counsel? May it please the Court? Steve Kalpatar on behalf of the appellee Dana Mulligan. May I proceed? Of course. Thank you. Justices, there are two main points that I want to emphasize here that I'd like you to take away. The first is that Mr. Mulligan does not believe that this court appropriately has jurisdiction. There were some questions that were asked to the appellant regarding that. Are there any cases directly on point? And no, there are not, in fact. There are a number of cases that have been cited by both parties to describe the process during which a court will analyze whether or not it has jurisdiction properly under 303. There's a number of cases that talk about was there, is there something else to consider? Is this hearing anything more than a rubber stamp of factual considerations, things of this sort? Is there an analysis that has to be conducted by the administrative body? As you're well aware, on an administrative review, a court can overturn, it can affirm, and it can remand for further proceedings. This is a further proceedings case. Wouldn't it be a huge waste of time if you were to affirm the board? If you were to? If you were to affirm the board's discharge of your claim, wouldn't going back to the board and then having the board have to figure out some lesser discipline be a huge waste of time? It wouldn't be a waste of time because a difference between a day's suspension or a 30-day suspension, this is an important matter to a case. In the Mulligan case, he had his administrative hearing, he had the review, and the judge in that case looked at it and said, I'm left with a firm and clear conclusion. There was a mistake that was made here. This wasn't a ---- With respect to the disposition. With respect to the disposition. There was not a ---- this was not a leniency case. What should have happened is what actually did happen in Robbins. Robbins was a great example. Well, in Robbins, wasn't there inherent in that additional testimony to be taken, additional evidence to be taken? Here, I don't see any indication that the trial court was sending it back for new evidence or new ---- I'm sorry, I don't mean to cut you off, but new evidence, anything in addition to the record that was already there. Rather, I saw it as the trial court saying, all right, commission, look at this again and come up with a lesser sanction. Actually, Robbins was remanded three times back to the administrative body. The first two times, there were elaborate procedures, elaborate hearings that needed to be completed. But on the third remand, the judge ordered the case back to the administrative body for a decision that is short of discharge, something other than discharge. The administrative board there rendered a decision of 180-day suspension under the merit board rules. After that, the circuit court affirmed that decision, and then it was appealed to the appellate court. This is where we should be. We should be in front of the administrative board so that they can have a hearing to make a determination on something that's different than discharge. Isn't the original decision of the commission a full and final decision? Yes. However, under administrative review, one of the express powers that the circuit court has is to remand it for additional proceedings. So when the circuit court at administrative review remands it back to the administrative body, it is with that instruction to make a determination that it's something else. There's a gap between what the administrative board might have done. We don't know what they might have done. I would imagine that they're going to tell you today that they would have upheld their own decision. However, we really don't know that because it never went back to that board for that process, for the judge's order to be followed. After that decision, it should have gone back to that judge for the affirmation and then filed. But instead, the administrative board jumped the gun here. Rather than making any decision at all, it filed its notice of appeal. Then after it filed its notice of appeal, that's when it filed a motion in circuit court to stay the judgment. Well, a case that's sent back, I agree with you that the board's decision here originally was final. Then if a case is sent back for additional proceedings that render that original decision non-final, then we wouldn't have jurisdiction. But this didn't render that original decision non-final because if we affirm that, then he's discharged and the case is over. When it was remanded back, it did not render the finding, the manifest way of the evidence finding, the finding of fault, the violation of the rules. That didn't upturn that. That was maintained. However, the cause is that second element. Whenever, under the clearly erroneous standard, what the courts need to look at is they need to look first at was there a rule that was violated. And in this, the answer is yes. Mr. Mulligano sat in front of a hearing and sat in front of the commissioners and said, I did this wrong. You're right. I waited six minutes, and I don't know why. I don't remember the circumstances. But there was a six-minute delay in my calling available. It happened. I'm sorry. I didn't mean for it to do it. It wasn't purposeful. But I did it. So that's not a conclusion. That's not something that needs to be analyzed by the court. It's not something that needs to be readdressed. The second charge of driving down the street that there were some verbal instructions that they should avoid that street. He drove down it, and he said, yes, I did do it. You're right. I did not have my emergency lights on. I had a superior officer in the back who had the authority to tell me to turn them off. He knew about it for a mile and a half, and he didn't tell me to turn them off. That's another rule violation. So the question about those rule violations, that's not an issue. The question is the cause of it. Is there cause for the discharge? So in doing that, the circuit court was telling the administrative board, you need to make further decisions. You need to determine the level of punishment based upon the allegations that are filed against Mr. Mulligano. And this is why we come to that test. I just wonder if, in fact, it had happened the way that you suggested, and they didn't appeal. And then they go back to the board, and they give them a 30-day suspension. And then they appeal. And then you're up here before us arguing that they should have, that that original decision was final. They should have appealed it, and they didn't. I'm just saying, I'm just looking at it. What if it went that way? Would you have a good argument that we're only up here now to see whether that 30-day suspension is appropriate? We can't go back because that final order is passed. I understand your point on that. That certainly isn't what happened in Robbins, because in Robbins what happened was that the chief had the authority to file its appeal. And that's the same case here. When you have an administrative review, you don't have just two parties. You have the chief, you've got civil service board, and you have the individual who's charged. In fact, I had a different case in front of the First Circuit a few years ago, similar. It was a remand back to Rule 23 decision, so I'm not going to give you all the details on it. But the officer was ordered a charge less than termination, sent back to the board, and the board issued a new decision. And their new decisions basically said, you know, we don't agree with the court, we're rendering a new decision, and this is it, and this is the final decision. And after that, the appeal was filed. So there's different processes by which commissioners or chiefs of police can handle this. But what they cannot do is they cannot avoid going back to the court that they're ordered to go back to. And that's what happened here. The circuit court ordered them, go back to the administrative board, go back to the administrative body and get a new decision. And then after that, if you don't like it, we can affirm that decision at the circuit court. There has to be a final decision at the circuit court in order for there to be an appeal. That's where we're at here. There's no final decision at the circuit court. It needed to go back first to the board, then to the court. By final decision, are you saying a decision that the circuit court affirmed? I'm saying that it's a decision of the circuit court that resolves all of the substantial issues between the parties. Well, they did resolve it. They did. I don't think I believe that remanding back for some other penalty other than termination is a complete resolution of the case. There's still issues at dispute, and those issues are what should this punishment be. Well, isn't it inherent when the commission files its notice of appeal that it has  I mean, it's not just a matter of repeating a decision. It's inherently reiterating the same decision. If an administrative board issues any decision without giving a hearing, then that would be a violation. Well, the trial court never said they had to give you a hearing. That's true. The trial court said reconsider. We've reconsidered. Here's our notice of appeal. Why wouldn't we just assume that? I mean, the courts don't make people jump through hoops that are pointless. That's never part of a court's decision. So can't we assume that? I understand what you're saying, Your Honor. I don't agree that this decision of something less than discharge is trivial. I'm not saying it's trivial. I'm suggesting that to make the board reconvene to simply say, you know, we've looked at it again. This is our decision. Inherent in filing their notice of appeal, that is their decision. But the amount of time and effort between the board being given the opportunity to render a decision, say, no, we agree with ourselves, or what they did in Robbins, to follow the court's order and do what the court told them to do and then have an appeal filed by the chief in that case, that takes very limited time. The other alternative would be for the board to say, no, we still agree with ourselves and we're reaffirming our own order. Then it goes back to the court. How much time would that have taken? As it was, it was only a matter of time. Wait, wait, wait. You're saying if they had convened and said, we reiterate or reaffirm our discharge, that you would then have gone back to the circuit court for yet another hearing? Would you expect the trial court to change its mind? I would not expect the trial court to change its mind. Isn't that somewhat of the point here? How many times would we flip back and forth before a notice of appeal is valid? Well, I think that that's the essential issue that we have to tangle with here, because there are, as I pointed out, there's a number of cases that each party has identified regarding those remands back. This happens very often in pension cases where the pension question is disabled or not disabled. Right. So those are really easy. They're not easy cases, but they're easy answers. And the judge in those cases at administrative review can order the case back to an administrative body to say, make a new decision that this person is disabled. That's a yes or no question. This is not a yes or no question. And the cases that we have cited, and Robbins is a great example, again, is not a yes or no answer. Robbins cites Williams, and the quote is, whereas here the circuit court remanded the matter to the board to impose a lesser penalty than the original penalty of discharge, we can review the board's original decision to discharge. Because, again, we're reviewing the board's decision, not the trial court's decision. Correct. At any rate, counsel, you said you had two issues. Thank you. The second is even if this court finds jurisdiction under the clearly erroneous standard and under the test very elaborately set forth in AFS Messenger, I expect that anyone reading this entire record will leave this with a firm, indefinite conviction and belief that a mistake has been made. We have, Mr. Mulligano has never said to anybody, he's never testified and said, I am perfect, I did everything right. It's so obvious. Why didn't the trial court tell us what it was thinking? I don't have an answer for you on that, Justice. I wish that he had. But even if he had, you're not here to review what he decided. I understand that. But, you know, counsel, the second counsel that argued for the appellant, said that there's no issue of fact here. Correct. And really there's no issue of, maybe there is, you tell me, but progressive discipline. The board made a finding of two written reprimands and a stay suspension before these charges were filed. The trial court specifically found no disparate treatment. So when we have these, we're not supposed, the trial court and us, we're not supposed to put ourselves, you know, in the decision-making process of the board, and we're supposed to give the board great deference. You are supposed to give the board great deference, but that deference ends when it appears that whatever they've done is arbitrary, it's unreasonable. But how is it arbitrary? How is it unreasonable? Well, for example, the issue of calling six minutes late. I mean, it is, first of all, we're dealing with a firefighter with ten years. Let me back up for a second. Sure. The ultimate disposition here is based on the violations that precipitate. Yes. But it also requires a view of the entire ten-year history. It does. And all of the prior discipline and prior opportunities for improvement. And the conclusions that the board or commission draws from that. Yes. That's where I don't substitute my judgment. I have to look at their findings from that, and then based on that find that it's arbitrary. I understand. Correct? Well, AFS tells us that it doesn't tell us just to look at the order of the administrative body. It tells us to look at the entire record. Correct. That's what I mean. It's the entire. So we look at the fact that this is a ten-year firefighter with, although he admits these violations happened, and I'm not dismissing them as nothing, and Mr. Mulugano has never dismissed them as nothing, but we are saying these are not cause for termination. They just aren't. They are cause to discipline him, but they're not cause to remove him from. May I continue? Sure. They're not cause to remove him from service for the rest of his career for these violations. Anyone that I've ever talked to about this in this field, that I've described these events. So Mr. Mulugano didn't call in six minutes late on the radio. He drove with his lights on but not with the sirens, although that, as you can tell in the record, that is not uncommon to happen. That does happen from time to time. And he drove his car, his ambulance, down a street that different firefighters testified, yeah, I know about this rule. I think it's a guideline. It's a policy. It's a policy. We have different answers from different firefighters. This is not something where everybody says, oh, yes, we can't do this. If we do this, we're going to get in trouble. So there are two incidents here. And in that second incident, there was somebody in control of the scene, the paramedic in back. There's ample testimony that says that that paramedic had the authority to make whatever decision he wanted. If this was dangerous, what Firefighter Mulugano was doing, why did he sit in the back for a mile and a half or so during this driving and not say anything? Because he didn't want to embarrass the firefighter in front of a patient? I mean, if this is really a safety issue, I think something else would have happened. Everybody agreed it was a safety issue. I mean, even Mulugano's one character witness said, I'm going to change my mind if it's a Code 3 violation. The admission was that any time that you drive Code 3, it does increase risk. What I'm suggesting is that the increased risk that Firefighter Drinkel observed from sitting in the back of the ambulance and seeing that the vehicle was driving with the lights on, that whatever risk that he saw obviously was not enough to overcome embarrassment or the concern that he might embarrass the firefighter in front of a patient. If this was a substantial risk, and by the way, cars parked on the side of the road and going to the side of the road, that's exactly what they're supposed to do when an emergency vehicle is driving with its lights on. That's what you do. It's what I do if I see an ambulance. That begs the question, though. The question is, should the lights have been on in the first place? Well, and that's a great question. And in this, it looks like probably not. I mean, Firefighter Mulugano said, he didn't give us a really great reason as to why he was driving with those lights on. He was transporting a patient to the hospital. There was plenty of testimony in the record about how he and other firefighters at different occasions said, which code should we go? Should we go Code 3, Code 1? And ultimately, the paramedic is in charge in that scene who was in the back of the ambulance and could have said, take it down from a Code 3 to Code 1. But wouldn't he have been alerted had the siren been on? Yes. You certainly would. You're not arguing that these were de minimis violations, are you? I'm arguing that they are minimal enough that discharge for these violations should leave you with a firm and definite conclusion that that's a mistake. That is a mistake. And there's the rub. When do we substitute our judgment for the commission and when do we don't? I mean, if we could sit up here and have a definite and firm conviction that these were de minimis violations, then I think it would be no problem. If we do not have the firm and definite conviction that they're de minimis violations, but they are, in fact, safety violations, where is the continuum that we step in and say, Board, you're wrong even though you're a fire board. We know nothing about firefighting. Where is that? As was pointed out, the courts have given some guidance that you're not to substitute your judgment for these administrative boards because they are presumed to have expertise in these areas. Once you read the entire record, you see very early on, and I think the tenth page of the record, there's some explanation that this board has never had a termination hearing. They've never analyzed these things before. This is not truly an expertise case. But there's no exception for that in the case law that tells us not to substitute our judgment. That's correct. Even when it's their first trial. That's correct. But AFS tells you to look at the entire record. And that may come both ways because if they've never chosen to fire anybody before, they've never filed a violation so seriously. It appears that they've never had a charge before. Firefighter Maligano and the witnesses he presented demonstrated that there are some people with animosity towards him, and I think that that comes out pretty clearly. This case is a personality case at the end of the day. He wasn't liked by a few people. He was liked by several others, but wasn't liked by a few. And after... What about the 17 that wouldn't work with him, though? There's not any evidence of who those 17 are. There aren't. There are three people who are identified in the record that... Identified. Nonetheless, I take the testimony at face value, and the Chief says 17 people I had to rearrange as to who would work with him and who would not. Again, there's no evidence about who did. We don't know exactly who it was and what those circumstances. Did anybody cross-examine the Chief about that? Your Honor, I don't recall what I asked him about that. They're not personality issues. They're actual issues that the Board decided on. They are, however, a personality issue. It's not the reason to throw away a public servant's career. Any further questions? No. Thank you very much for your testimony. Do you wish to reply? May I proceed? Yes. Thank you. Okay. First, regarding the issue of jurisdiction, we know FLE claims that we don't know if the Commission would have issued a different decision had they considered a different penalty than discharge, when, in fact, we do know for a fact that the Commission would not have considered a different penalty other than discharge, because once the case was remanded back to them, they decided that they would like to file a stay of the Circuit Court's order requiring them to issue a different penalty because they wanted to appeal  was not arbitrary or unreasonable, which is the standard, and they felt that the Circuit Court decision was clearly erroneous and, therefore, the appropriate place for the decision to be reviewed was before the Suppell Court. Therefore, we do know, in fact, that the Commission would not have issued a different decision other than discharge had the case gone back to them for reconsideration on the penalty. Furthermore, there is nothing in the Circuit Court order that sent the case back to the Commission for further proceedings, further hearings, no issues of factual findings. The Circuit Court decision clearly states that all the Commission's factual findings were not against the manifest weight of the evidence. Therefore, they were all upheld. There was nothing else for the Commission to do, based on the Circuit Court order, other than issue a different penalty. That does not require any additional hearings. Therefore, under the standards, there was nothing further for the – no further proceedings for the Commission to take. Therefore, this case is properly before this Court. And if we were to affirm the trial court, and we go back to the Commission for another penalty, correct? Correct. And then possibly another appeal. Correct, Your Honor. So, I mean, we're talking about judicial academy, so we're going to have two Circuit Court cases and two appeals out of the same case? Potentially. Or, you know, if this were – and it went back to the Commission, and the Commission was required to enter a different penalty other than discharge, you know, I believe that it would be the issue – there would be, you know, no issue for further hearing. The Commission would have to either enter a decision other than discharge, or, again, I think we would still consider whether it would be appropriate to appeal it to the Supreme Court. I'm just wondering if the firefighter would have the cause to appeal. If the firefighter gets the maximum penalty short of discharge, whatever that might be, on the CBA, would he then be able to appeal again to the trial court for a lesser penalty? I believe so. And then back here again. Right. So I'm just saying, why shouldn't we just wait until it's all done and then take it all at once? Well, I believe that, again, also for judicial economy, if you were to uphold the Commission's decision that discharge was appropriate, then there would be – then the case would be over. There would be nothing further for the appellee to do, especially since they didn't cross-appeal anything in this case, and there would be nothing further for the circuit court or the Commission to do, and the case would be over. So I think that in the – as you put it very well on the appellee's questions, if we were to have to go back to the Commission based on the circuit court order and they were to issue a different penalty, and then the firefighter could go back to the circuit court and appeal that, or the Commission could go back to the circuit court and appeal or go up to the appellate court and appeal the decision, there would be a lot more court proceedings involved than if we just took the issue directly to the appellate court in this case. And if you were to uphold the Commission's decision, which we believe is appropriate in this case, the case is over. And may I quickly address – I know my time is up. Your time is up. It's counsel's time. Okay. Thank you. Again, very briefly, Justice, you mentioned wouldn't Drinkle in the back be alerted by the siren. That's absolutely correct. And Deputy Chief Schlick said not was it against policy. It's against the law to proceed with lights only. There's no – you're never supposed to do that. And fundamentally, the jumping-off rule that Mr. Mulligano violated was you're supposed to tell dispatch, we're leaving four Hospital X with victim Y, and we're going to proceed three. The dispatch then might have said, well, what are the conditions you're seeing? And said, don't do that. Stewart Avenue has kind of been glossed over. It's a very residential street with a school. So they're not supposed to be going there. You know, kids are attracted to emergency equipment. You know, they may run out and be waving or whatever, but the three-minute delay or the six-minute delay, he's trying to say it's de minimis. Another fire service had to answer that call from Grays Lake. Geographically speaking, not desirable. And he couldn't remember. He didn't admit that. He just couldn't remember it. And that's why there was no credibility issue on that. He didn't do it. He was reported by his coworkers, who saw his ambulance leaving the hospital and knew that he hadn't come up available. I'll just leave you with the image that you're driving down the street and suddenly there is an ambulance flying at you with lights on. I mean, that's counterintuitive to what we experienced. It's a scary moment when you ever have to get off the site. But when it's done in a reckless way, Drinkel couldn't reach through the back and grab him and say, Stop it. He was treating the patient. And, therefore, we didn't take this job away. And that's what he would like to tell you. We were bad to him. We took away his job. He forfeited his job. Thank you. All right. We want to thank both sides for excellent arguments this morning, and we will be in recess until our next argument at 10 a.m.